UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
IN RE MERIDIAN FUNDS GROUP :
SECURITIES AND EMPLOYEE :
RETIREMENT INCOME SECURITY ACT : 09 M.D. 2082
(ERISA) LITIGATION, :
: **OPINION**
:
:
:
:
:
:
------------------------------------------------x

This putative class action arises out of the massive Ponzi scheme orchestrated by Bernard Madoff.

The lead Plaintiff in this case, Pension Trust Fund for Operating Engineers ("Operating Engineers"), is a multi-employer pension plan governed by ERISA. Operating Engineers was an investor in a hedge fund, Meridian Diversified ERISA Fund, Ltd. ("the ERISA Fund"), managed by Meridian Diversified Fund Management, LLC ("Meridian Management").  A portion of this fund's assets was invested in Rye Select Broad Market XL Portfolio Ltd. ("the Rye Portfolio Fund"), managed by Tremont Partners, Inc., which served as a "feeder" fund, investing the fund's assets with Madoff and his investment firm, Bernard L. Madoff Investment Securities LLC ("BMIS").  When Madoff's fraud was discovered, Meridian's entire investment in the Rye Portfolio Fund was lost and, with it, a portion of plaintiff's investment in the ERISA Fund.

The complaint alleges violations of the Securities Act of 1933, the Securities Exchange Act of 1934, the Employee Retirement Income Security Act of 1974, breach of contract, breach of fiduciary duty, unjust enrichment, gross negligence, common law fraud, and negligent misrepresentation.

Defendants move to dismiss all claims. Defendants' motion is granted in part and denied in part.

### The Parties

Operating Engineers purchased and held shares worth a total of $125 million in the Meridian Diversified ERISA Fund, Ltd. ("the ERISA Fund") during the class period. (The class period covers shares purchased between March 24, 2004 and December 11, 2008, or held on December 11, 2008.) F.G. Crossthwaite, Operating Engineers' fiduciary, asserts ERISA claims on Operating Engineers' behalf, as required by ERISA § 502. This action is also brought on behalf of all persons similarly situated who purchased shares in funds managed by Meridian Management or one of a number of related entities — Meridian Capital Partners, Inc., ("Meridian Management"), Meridian Diversified Fund, LP, and Meridian Diversified Fund, LLC (collectively, the "Meridian Corporate Defendants") — and who suffered losses as a result of the alleged misconduct described below. Operating Engineers asserts claims not only related to the Meridian Diversified fund they invested in--the ERISA

Fund--but also all funds managed by Meridian Corporate Defendants that invested in any Madoff-related entity.[1]

Operating Engineers has sued various Meridian Corporate Defendants. These include Meridian Diversified and Meridian Capital Partners, Inc. These appear also to include Meridian Diversified Fund, LP, and Meridian Diversified Fund, LLC though, presumably due to a drafting mistake, "Meridian Corporate Defendants" is at one point also defined only to include Meridian Diversified and Meridian Capital.

Operating Engineers has also sued various individual defendants who served as executives of Meridian Management and Meridian Capital. These include William Lawrence, Donald Halldin, James Owen, John Sica, Timothy Hickey, Robert Murphy, Howard Fischer, Laura Smith, Peter Brown, and Mark Hurrell (collectively, "Individual Defendants").

Operating Engineers have also listed Doe defendants representing individuals or entities who may also be liable but whose identities are not yet known.

---

[1] These other funds are the Meridian Horizon Fund, LP; the Meridian Horizon Fund II, LP; the Meridian Diversified Fund, LP; the Meridian Diversified Fund, Ltd.; the Meridian Diversified Compass Fund, Ltd.; the Meridian Absolute Return ERISA Fund, Ltd.; and the Kingate Global Fund, Ltd.

**Standing**

As described above, the complaint alleges violations by defendants with respect to eight funds controlled by Meridian Corporate Defendants. See supra p. 3. However, as also described above, Operating Engineers only invested in one of these funds, the ERISA Fund. Thus, as to the seven remaining funds, Operating Engineers has suffered no injury.

Operating Engineers is only permitted to pursue claims relating to the Meridian fund in which it actually invested, i.e., the ERISA Fund. Therefore, all claims brought by Operating Engineers on behalf of putative, as yet unnamed class members who did not invest in the ERISA Fund are dismissed. However, because these claims are brought only on behalf of putative class members, there is no impact on the parties named in this lawsuit. It only affects the composition of the putative class and, accordingly, the number of potential claims against defendants.

Operating Engineers' State-Law Claims

Operating Engineers also brings a number of state-law claims on behalf of putative class members who are not ERISA plans. Naturally, because they are not ERISA Plans, these non-ERISA class plaintiffs were invested in funds other than the ERISA Fund in which Operating Engineers had invested.

However, as discussed above, Operating Engineers only has standing to bring claims arising out of its own investment in the ERISA Fund.  Therefore, Operating Engineers does not have standing to bring these common law claims on behalf of non-ERISA class plaintiffs who, as Operating Engineers concedes, invested in funds other than the ERISA Fund.  Thus, Operating Engineers' claims of breach of fiduciary duty, fraud, unjust enrichment, breach of contract, negligent misrepresentation, and gross negligence (counts 11, 12, 13, 14, 15, and 16, respectively), putatively brought on behalf of non-ERISA class plaintiffs, are dismissed.

**Securities Fraud**

The foundation of the claim of securities fraud is that investors such as Operating Engineers were led to believe that due diligence would be performed upon the party who managed the Rye Portfolio Fund.  In the complaint it is conceded that the party identified as such manager and occupying the post of manager was Tremont Partners, Inc.  However, the complaint alleges that funds invested with Rye were turned over directly to Madoff and that Madoff was in reality the manager of how those funds would be invested.  Of course, as it turned out, the funds were not actually invested but were used in the Ponzi scheme.  But the allegation nevertheless is that, for better or for worse, Madoff was the manager.  The claim in the complaint is that the required due diligence

could only properly be performed on Madoff, and that no such due diligence was in fact carried on.

As to the above issues, the complaint does not contain the type of allegations, either in form or substance, which should be found in a proper pleading.  There are a number of conclusory allegations without the kind of supporting facts which should be pleaded.  See pars. 49, 51, 54, 55, 77, 79, 80, etc.  However, the complaint also contains lengthy quotations said to come from an interview of two Meridian executives conducted by a consulting firm in December, 2008.  See pars. 85-95.  The substance of such an interview would normally be considered evidence to be introduced at trial, and there are problems with quoting such evidence at length in the allegations of a complaint.  However, it is surely true that this interview adds substance to the conclusory allegations made earlier in the complaint.

Taking into account all the relevant portions in the complaint, the court finds that there are sufficient allegations that Madoff was in fact the manager of the funds invested by Operating Engineers and that the Meridian defendants knew that this was so.

However, this does not take us all the way to a proper pleading of securities fraud.  A proper complaint must still allege scienter.  There is no allegation in the complaint that the Meridian defendants knew of irregularities involving Madoff, much less his Ponzi scheme, at the time Operating Engineers was investing with Meridian.  What is alleged, over

and over, in the portions of the complaint referred to above, is that Meridian failed to perform due diligence as to Madoff. This, of course, in and of itself does not constitute a claim of fraud. However, the complaint alleges that the Meridian defendants "promised investors they would undertake" a "comprehensive due diligence review of Tremont, Madoff and BMIS." See pars 80 and 81.

What is alleged here, at most, is a failure to keep a promise or commitment. But obviously this does not rise to the level of fraud. There is no allegation that, whatever commitments were made regarding due diligence, such commitments were made with some fraudulent intent, specifically with the intent that the diligence would not be performed. In this connection, it is useful to note certain representations made to investors regarding the kind of diligence that was intended, and specific reference here is made to certain qualifications and warnings given to investors. The ERISA fund's Confidential Information Memorandum provided to prospective investors stated:

> The Fund is highly dependent upon the expertise and abilities of the underlying Fund Managers who have investment discretion over the Fund's assets invested with them. Therefore . . . the investment decisions made by any Fund Manager or its principals, may adversely affect investment results of the Fund. . . .

The court holds that the complaint does not sufficiently allege all the necessary elements of securities fraud. Therefore, count 1 is dismissed.

Because the plaintiff has not adequately pleaded a claim of securities fraud, the claim for control person liability under section 20(a) (claim 2) is also dismissed.

Count 3, for violation of § 12(a)(2) of the Securities Act, 15 U.S.C. § 77L(a)(2), is also dismissed because § 12(a)(2) only governs public securities offerings. See Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 571 (1995). The offerings made by Austin Capital were private.

## ERISA Claims

To refresh, Operating Engineers is an ERISA plan and is represented by its named fiduciary. The ERISA Fund invested in by Operating Engineers had a sufficient amount of investment from ERISA plans to transform all the fund's assets into "plan assets" under ERISA. Meridian Management managed the ERISA fund and is a fiduciary for ERISA purposes through its role as investment manager. In addition, because the fund held plan assets, those who exercised control over it may be considered functional (as opposed to named) fiduciaries under ERISA with the same attendant duties and liability. One of these duties is to prudently manage and invest ERISA plan assets. Another duty is to refrain from engaging in prohibited transactions involving self-dealing of ERISA plan assets.

Operating Engineers first alleges that all defendants are fiduciaries under ERISA via their control of plan assets or by giving investment

advice for a fee.  Operating Engineers then alleges that defendants breached their ERISA fiduciary duties by failing to prudently manage plan assets and by engaging in prohibited transactions.  Defendants argue that the allegations contained in the complaint are insufficient to establish that any defendant except Meridian Management is a fiduciary or that any fiduciary duty was breached.

Application of ERISA to Offshore Investments

As a preliminary matter, defendants have argued that since the ERISA Fund is organized in the Cayman Islands, application of ERISA to it would be a forbidden extraterritorial application of the law.

"When a statute gives no clear indication of an extraterritorial application, it has none." Morrison v. Nat'l Australian Bank, 130 S. Ct. 2869, 2878 (2010).  The Morrison court applied this presumption against extraterritoriality to hold that Rule 10b-5, promulgated under section 10(b) of the Exchange Act, does not have extraterritorial reach.  Id. at 2881.  Since Morrison, courts in this Circuit have held that various federal statutes do not have extraterritorial reach.  See, e.g., Norex Petroleum Ltd. v. Access Indus. Inc., 631 F.3d 29, 32 (2d Cir. 2010) (RICO).

It is also true, however, that the Supreme Court in Morrison explicitly contemplated the applicability of the Exchange Act to the sale of securities listed on an exchange in the United States or sold in the

U.S.  This "exception" takes cognizance of the fact that the application of the law to such transactions is not, in reality, an extraterritorial application of the law at all.  The test for extraterritoriality is not simply whether a foreign entity is made to comply with a provision of U.S. law.

The same is true here.  Though the ERISA Fund — and not, it should be emphasized, Meridian Management — was organized and headquartered in the Cayman Islands, there is no suggestion that any material part of the sale occurred there or anywhere else outside of the United States.

It is true that, prior to Morrison, courts in other districts had already applied the presumption against extraterritoriality to hold that ERISA does not apply extraterritorially only to claims brought by foreign nationals.  See Chong v. InFocus Corp., No. 08 Civ. 500-ST, 2008 U.S. Dist. LEXIS 103527, at **16-17 (D. Or. Oct. 24, 2008) (report and recommendation of Magistrate Judge; case settled before District Court could rule on objections); Gilles v. Snyder, No. 00-2133, 2000 U.S. Dist. LEXIS 13818, at *9 (E.D. Pa. Sept. 14, 2000).  In Chong the court held that a foreign national had no claim under ERISA (he could not invoke ERISA), and in Gilles the court held that the foreign plaintiff's state law claims were not preempted by ERISA on the merits (ERISA could not be invoked against him).  But cases brought by foreign plaintiffs, such as Chong and Gilles, present an obviously different question from this case,

where a domestic plaintiff engaged in an entirely domestic transaction to invest in a fund that happened to be organized offshore.

Moreover, the fund at issue is actually called the "Meridian Diversified ERISA Fund, Ltd." Clearly this fund was designed for and marketed to American investors, in the United States, who sought to invest ERISA-covered funds. Under these circumstances, it would be a truly bizarre result to find that ERISA statute does not apply to claims about investment in this "ERISA Fund" merely because it is organized offshore. ERISA clearly governs this transaction.

Fiduciary Status

Liability for imprudence and for engaging in prohibited transactions can only attach to the defendants who were ERISA fiduciaries when imprudent decisions were made or the prohibited transactions were engaged in. See Pegram v. Herdrich, 530 U.S. 211, 226 (2000). Thus, in addition to pleading facts sufficient to allege imprudence and an improper transaction, plaintiffs must also allege facts supporting a plausible inference that each defendant was, at the relevant times, an ERISA fiduciary.

> ERISA provides that
>
> > a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets; (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys

> or other property of such plan, or has any authority or responsibility to do so; or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Defendants acknowledge that Meridian Management is an ERISA fiduciary for the ERISA Fund. But defendants argue that Operating Engineers has not adequately pleaded Meridian Capital's status as a fiduciary of the fund. The court concludes, however, that Operating Engineers has sufficiently pleaded that Meridian Capital is an "investment manager" within the meaning of 29 U.S.C. § 1002(38) and that as the managing member of the firm, it has the power to control the investments made by Meridian Management. Plaintiff has also pleaded that Meridian Capital received fees for the rendering of investment advice.

As relates to defendants Meridian Diversified Fund, LLC and Meridian Diversified, LP, Operating Engineers plead no facts at all. However, its briefs have also not discussed the fiduciary status of these defendants and it appears that Operating Engineers does not intend to bring ERISA claims against these defendants. But to the extent Operating Engineers did intend to allege that these two defendants were fiduciaries, it has failed to sufficiently do so.

The complaint also alleges that each individual defendant is an ERISA fiduciary by virtue of their roles as officers and directors of Meridian Management and through providing investment advice for a fee.

The offering documents for the ERISA Fund support Operating Engineers' theory that the individual defendants played a role in managing its investments.  This includes statements that:  Lawrence "overs[aw] all aspects of the firm's investment management function, and provid[ed] strategic leadership"; Sica was "active in the firm's investment and product development activities"; Hickey was "responsible for all aspects of the firm's financial reporting and fund administration function"; and Murphy and Fischer were "responsible for manager research, due diligence, and monitoring."  The complaint also sufficiently alleges that the other individual defendants exercised control over Meridian's investments.

Thus, Operating Engineers' claims that rely on ERISA fiduciary status (counts 4-9) are dismissed as to Meridian Diversified Fund, L.P. and Meridian Diversified Fund, LLC.  The complaint sufficiently pleads that the other defendants are fiduciaries under ERISA.

Prohibited Transactions

As noted above, Operating Engineers alleges the diversion of assets by Meridian Management from the ERISA Fund into a segregated portfolio for the purpose of funding a lawsuit against various Tremont entities to recover Meridian Management's losses suffered as a result of Madoff's fraud (count 7).  Operating Engineers claims this arrangement

is in violation of ERISA § 406(a), which prohibits, *inter alia*, "use by or for the benefit of a party in interest, of any assets of the plan," and § 406(b), which prohibits, *inter alia*, a fiduciary from dealing "with the assets of the plan in his own interest."

Defendants do not deny that such a diversion took place, but they argue that the transaction was not with "a party in interest" and so does not violate ERISA § 406(a) and that the transaction is for the benefit of investors and so does not violate § 406(b).  Defendants claim the segregated portfolio benefits investors because any recovery as a result of the litigation funded by the portfolio will be passed on to investors.  The Second Circuit, in State St. Bank & Trust v. Salovaara, 326 F.3d 130, 137 (2d Cir. 2003), interpreted ERISA § 408(c) to allow a fiduciary to be reimbursed, through plan assets, for the legal costs of initiating lawsuits, when such suits are properly incurred in the performance of the fiduciary's duties with respect the plan.  The court further stated that a legal expense is "properly" incurred when the fiduciary initiated the lawsuits as part of his duties with the fund and with an "eye single" towards the benefit of the fund.  Id. at 139.

Here, the lawsuits brought by Meridian Management against Tremont are for the benefit of investors like Operating Investors because the lawsuits are attempting to recover a portion of Operating Engineers' investment that would otherwise be lost.  This is just the type of activity that may be funded from plan assets according to the court in State St.

Therefore, count 7 is dismissed with respect to all defendants.

Prudence

As discussed previously, the complaint alleges, in short, that by missing or not paying sufficient attention to the red flags of Madoff's operation, defendants failed to invest and/or manage ERISA assets in a prudent manner, in violation of ERISA § 404(a)(1)(B). With such claims, the issue is whether a plaintiff's allegations support an inference that the ERISA fiduciaries made investment decisions under circumstances that gave rise to an inprudent level of risk. See In re Morgan Stanley Info. Fund Sec. Litig., 592 F.3d 347, 364 (2d Cir. 2010).

The ERISA prudence standard is one of the highest duties known to the law. Donovan v. Bierwirth, 680 F.2d 263, 272 n.8 (2d Cir. 1982), cert. denied, 459 U.S. 1069 (1983). This standard does not require merely the level of care expected of a prudent layperson, but rather that of a prudent fiduciary with experience in dealing with a similar enterprise. United States v. Mason Tenders Dist. Council of Greater New York, 909 F. Supp. 882, 886 (S.D.N.Y. 1995).

> Courts have construed ERISA's prudent person standard as an objective standard, requiring the fiduciary (1) to employ proper methods to investigate, evaluate and structure the investment; (2) to act in a manner as would others who have a capacity and familiarity with such matters; and (3) to exercise independent judgment when making investment decisions.

Bd. of Trustees of Local 295/Local 851-IBT Emp'r Pension Fund v. Callan Assocs, Inc., 97 Civ. 1741, 1998 WL 289697 (S.D.N.Y. June 4, 1998) aff'd sub nom. Bd. of Trustees of Local 295/Local 851-IBT Emp'r Group Pension Fund & Local 295/Local 851-IBT Emp'r Group Welfare Fund v. Callan Assocs, Inc., 175 F.3d 1007 (2d Cir. 1999).

However, the court must take care not to judge the defendants' behavior with the benefit of hindsight. Chao v. Merino, 452 F.3d 174, 182 (2d Cir. 2006).

In this case, prudence is measured against hypothetical sophisticated and prudent investment professionals with experience controlling and managing large hedge funds. Thus, the proper question to focus on is whether a prudent, sophisticated investment professional with experience in controlling large hedge funds and faced with the same facts, would have acted in a similar fashion as defendants.

In answering this question, the court is particularly impressed by the allegation that Madoff's returns, based on his advertised investment strategy, were mathematically impossible — a fact allegedly recognized by other investment managers before the fraud was revealed to the wider world. Plaintiffs allege that the defendants knew that Madoff was the person actually managing their investment and that they knew, in at least broad terms, the strategy Madoff purported to be following. Therefore, as sophisticated investors, defendants should have been

aware of this and other red flags which should have set off alarms and made defendants question their investment.  Thus, defendants' unawareness of, or blindness to, this particular anomaly raises a significant question as to whether defendants, at the various decision points, were as careful as they should have been in making their investment decisions in light of the information available.  See Donovan, 680 F.2d at 271-73; In re Beacon, 745 F. Supp. 2d at 419 (allegations that defendants failed to act on knowledge of material risk to fund was enough to support inference of imprudence).  Moreover, defendants continued to invest in Madoff's funds through Tremont for many years, raising further questions as to the prudence they exercised.

For the above reasons, Operating Engineers has adequately alleged imprudence.  Thus, the motion to dismiss is denied as to counts 4, 5, and 6 as to all defendants except Meridian Diversified Fund, L.P. and Meridian Diversified Fund, LLC.  Counts 4, 5, and 6 are dismissed as to these two defendants.

Co-fiduciary Liability

The allegations underlying the claim for primary breach of fiduciary duty, which this court has found sufficient to survive the motion to dismiss, also support a claim for co-fiduciary liability.  Therefore, like the breach of ERISA fiduciary duty claim, the motion to dismiss the claim for breach of co-fiduciary duty (count 8) is granted only

as to Meridian Diversified Fund, L.P. and Meridian Diversified Fund, LLC. It is denied as to count 8 in all other respects.

Disgorgement

Operating Engineers bring separate claims for disgorgement under ERISA § 502(a)(3) against any defendant determined to be a fiduciary (count 9) and any defendant determined not to be a fiduciary (count 10). As to fiduciaries, disgorgement is a remedy for breach of fiduciary duty, not a separate cause of action. Thus, count 9 is dismissed as duplicative of counts 4-6. However, count 10, the disgorgement claim against non-fiduciaries, has been sufficiently pleaded for purposes of this motion.

**CONCLUSION**

The motion to dismiss is granted as to all counts with respect to Meridian Diversified Fund, L.P. and Meridian Diversified Fund, LLC. The motion to dismiss as to the other defendants is granted as to all counts except 4, 5, 6, 8 and 10.

Dated: New York, New York
       January 7, 2013

Thomas P. Griesa
U.S. District Judge