UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

In re MERIDIAN FUNDS GROUP        :  No. 09-md-2082
SECURITIES & EMPLOYEE RETIREMENT :
INCOME SECURITY ACT (ERISA)     :  MEMORANDUM OF LAW IN SUPPORT
LITIGATION                        :  OF LEAD COUNSEL'S MOTION FOR AN
                                    :  AWARD OF ATTORNEYS' FEES AND

———————————————————— x  EXPENSES

1166521_1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................1

II.  FACTUAL AND PROCEDURAL SUMMARY ................................................4

III. ARGUMENT ........................................................................................................4

    A.   Plaintiff's Counsel Are Entitled to an Award of Attorneys' Fees and
Expenses from the Common Fund..............................................................4

    B.   The Court Should Award a Reasonable Percentage of the Common Fund............5

    C.   The Relevant Factors Confirm that the Requested Fee Is Reasonable ...................9

        1.   The Time and Labor Expended by Counsel ................................................9

        2.   The Risks of the Litigation ......................................................................10

            a.   The Contingent Nature of Plaintiff's Counsel's
Representation Supports the Requested Fee ..................................10

            b.   Litigation Risks...............................................................................12

            c.   Risk as to Damages .........................................................................13

        3.   The Magnitude and Complexity of the Litigation ....................................13

        4.   The Quality of Representation ..................................................................15

        5.   Public Policy Considerations ...................................................................16

        6.   The Requested Attorneys' Fees Are Also Reasonable Under the
Lodestar Cross-Check ..............................................................................17

        7.   The Requested Attorneys' Fees Are Reasonable Under the
Percentage-of-the-Fund Method ..............................................................19

        8.   The Class' Reaction to the Fee Request ...................................................20

IV.  PLAINTIFF'S COUNSEL'S EXPENSES WERE REASONABLY INCURRED
AND NECESSARY TO THE PROSECUTION OF THIS ACTION...............................20

V.   CONCLUSION..................................................................................................21

1166521_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aponte v. Comprehensive Health Mgmt.*,
    No. 10 Civ. 4825 (JLC), 2013 U.S. Dist. LEXIS 47637
    (S.D.N.Y. Apr. 2, 2013) ...........................................................................................7, 10

*Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
    No. 09 Civ. 686 (SAS), 2012 U.S. Dist. LEXIS 79418
    (S.D.N.Y. June 7, 2012) .........................................................................................16, 21

*Bd. of Trs. of the Operating Eng'rs Pension Trust v.*
*JPMorgan Chase Bank, N.A.*,
    No. 09-cv-09333-KBF, slip op.
    (S.D.N.Y. Nov. 20, 2013) ..............................................................................................7

*Benesowitz v. Metro. Life Ins. Co.*,
    No. 04-CV-805 (TCP), 2009 U.S. Dist. LEXIS 64269
    (E.D.N.Y. July 9, 2009) ................................................................................................16

*Blum v. Stenson*,
    465 U.S. 886 (1984).................................................................................................6, 19

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980).......................................................................................................4

*Brown v. Phillips Petroleum Co.*,
    838 F.2d 451 (10th Cir. 1988) .......................................................................................7

*Camden I Condo. Ass'n v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) .......................................................................................7

*Chatelain v. Prudential-Bache Sec.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) ..............................................................................13

*City of Providence v. Aéropostale, Inc.*,
    No. 11 Civ. 7132 (CM), 2014 U.S. Dist. LEXIS 64517
    (S.D.N.Y. May 9, 2014) ...................................................................................... *passim*

*Clark v. Ecolab Inc.*,
    No. 07 Civ. 8623 (PAC), 2010 U.S. Dist. LEXIS 47036
    (S.D.N.Y. May 11, 2010)..............................................................................................19

**Page**

*Collins v. Olin Corp.*,
   No. 3:03-cv-945 (CFD), 2010 U.S. Dist. LEXIS 39862
   (D. Conn. Apr. 21, 2010) ........................................................................19

*Coram Healthcare Corp. v. CIGNA*,
   236 F. Supp. 2d 312 (S.D.N.Y. 2002) ...................................................16

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011) .....................................................6

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ...................................................................10

*Elliot v. Leatherstocking Corp.*,
   No. 3:10-CV-0934, 2012 U.S. Dist. LEXIS 171443
   (N.D.N.Y. Dec. 4, 2012) ...........................................................................8

*Fogarazzo v. Lehman Bros.*,
   No. 03 Civ. 5194 (SAS), 2011 U.S. Dist. LEXIS 17747
   (S.D.N.Y. Feb. 23, 2011) ...........................................................................8

*Freedman v. Weatherford Int'l Ltd.*,
   No. 2121(LAK), 2015 WL 745414 (S.D.N.Y. Nov. 23, 2015) .................8

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000).............................................................. *passim*

*Greenblatt v. Prescription Plan Servs. Corp.*,
   783 F. Supp. 814 (S.D.N.Y. 1992) .........................................................16

*Hardt v. Reliance Standard Life Ins. Co.*,
   560 U.S. 242 (2010)...................................................................................4

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) .....................................................................7

*Hayes v. Harmony Gold Mining Co.*,
   509 F. App'x 21 (2d Cir. 2013) .................................................................6

*Hicks v. Morgan Stanley & Co.*,
   No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
   (S.D.N.Y. Oct. 24, 2005) ...........................................................................7

**Page**

*In re "Agent Orange" Prod. Liab. Litig.*,
611 F. Supp. 1296 (E.D.N.Y. 1985), *aff'd in part and
rev'd in part on other grounds*, 818 F.2d 226 (2d Cir. 1987)....................................................6

*In re Alstom SA Sec. Litig.*,
741 F. Supp. 2d 469 (S.D.N.Y. 2010)..................................................................................12

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)..............................................................................9, 10

*In re Austin Capital Mgmt. Ltd., Sec. & Emp. Ret. Income
Sec. Act (ERISA) Litig.*,
No. 1:09-md-02075-TPG, slip op.
(S.D.N.Y. Oct. 2, 2014) ....................................................................................................7, 8

*In re Beacon Assocs. Litig.*,
No. 09 Civ. 777 (CM), 2013 U.S. Dist. LEXIS 82192
(S.D.N.Y. May 9, 2013)..........................................................................................................7

*In re Brown Co. Sec. Litig.*,
355 F. Supp. 574 (S.D.N.Y. 1973) ......................................................................................14

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ..................................................8

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ...............................................................................................10

*In re Flag Telecom Holdings*,
No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702
(S.D.N.Y. Nov. 8, 2010) .......................................................................................................15

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................................14, 21

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995).....................................................................................................6

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
142 F.R.D. 588 (S.D.N.Y. 1992) ............................................................................................8

*In re Ikon Office Solutions, Inc.*,
194 F.R.D. 166 (E.D. Pa. 2000).............................................................................................18

- iv -

**Page**

*In re IMAX Sec. Litig.*,
No. 06 Civ. 6128 (NRB), 2012 U.S. Dist. LEXIS 108516
(S.D.N.Y. Aug. 1, 2012) ................................................................................................7

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003).........................................................................20

*In re Interpublic Sec. Litig.*,
No. Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429
(S.D.N.Y. Oct. 27, 2004) ..............................................................................................5

*In re Ivan F. Boesky Sec. Litig.*,
888 F. Supp. 551 (S.D.N.Y. 1995) ..............................................................................17

*In re JP Morgan Chase & Co. Sec. Litig.*,
No. 1:12-cv-03852-GBD, slip op. (S.D.N.Y. May 10, 2016)...................................8

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953
(S.D.N.Y. Dec. 23, 2009)............................................................................................13

*In re Oracle Corp. Sec. Litig.*,
No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995
(N.D. Cal. June 16, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010)...............................11

*In re OSG Sec. Litig.*,
No. 1:12-cv-07948-SAS, slip op.
(S.D.N.Y. Dec. 2, 2015)...............................................................................................7

*In re Prudential Sec. Ltd. P'ships Litig.*,
985 F. Supp. 410 (S.D.N.Y. 1997) ..............................................................................10

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005).........................................................................................20

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393 (S.D.N.Y. 1999)..............................................................................8

*In re Thirteen Appeals Arising out of the San Juan Dupont
Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995).............................................................................................6

- v -

**Page**

*In re Top Tankers Inc., Sec. Litig.*,
   No. 06 Civ. 13761 (CM), 2008 U.S. Dist. LEXIS 58106
   (S.D.N.Y. July 31, 2008) ................................................................................5, 20

*In re Veeco Instruments Sec. Litig.*,
   No. 05-MD-01695 (CM), 2007 U.S. Dist. LEXIS 85554
   (S.D.N.Y. Nov. 7, 2007) ...............................................................................17

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom.*
   *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)..............................................................................8

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985),
   *aff'd*, 798 F.2d 35 (2d Cir. 1986) ...................................................................17

*In re Xcel Energy, Inc.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) .............................................................11

*Johnston v. Comerica Mortg. Corp.*,
   83 F.3d 241 (8th Cir. 1996) .............................................................................7

*Khait v. Whirlpool Corp.*,
   No. 06-6381 (ALC), 2010 U.S. Dist. LEXIS 4067
   (E.D.N.Y. Jan. 20, 2010) ...............................................................................19

*Landmen Partners Inc. v. The Blackstone Grp. L.P.*,
   No. 08-cv-03601-HB-FM, 2013 U.S. Dist. LEXIS 190808
   (S.D.N.Y. Dec. 18, 2013).............................................................................7, 8

*Maley v. Del Global Tech. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)....................................................8, 13, 20

*McMahon v. Olivier Cheng Catering & Events, LLC*,
   No. 08 Civ 8713 (PGG), 2010 U.S. Dist. LEXIS 18913
   (S.D.N.Y. Mar. 3, 2010) ................................................................................19

*Menkes v. Stolt Nielsen SA.*,
   No. 3:03CV00409(DJS), 2011 U.S. Dist. LEXIS 7066
   (D. Conn. Jan. 25, 2011)................................................................................19

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)...................................................................................17, 19

- vi -

**Page**

*Morrison v. Nat'l Austl. Bank Ltd.*,
   561 U.S. 247 (2010).................................................................................................12

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
   711 F.2d 1136 (2d Cir. 1983)...................................................................................17

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) .....................................................................................7

*Rawlings v. Prudential-Bache Props.*,
   9 F.3d 513 (6th Cir. 1993) .........................................................................................7

*Reyes v. Buddha-Bar NYC*,
   No. 08 Civ. 02494 (DF), 2009 U.S. Dist. LEXIS 45277
   (S.D.N.Y. May 28, 2009)..........................................................................................19

*Savoie v. Merchants Bank*,
   166 F.3d 456 (2d Cir. 1999)....................................................................................4, 6

*Shaw v. Toshiba Am. Info. Sys.*,
   91 F. Supp. 2d 942 (E.D. Tex. 2000) .........................................................................6

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ...................................................................................7

*Spann v. AOL Time Warner, Inc.*,
   No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848
   (S.D.N.Y. June 7, 2005)............................................................................................19

*Stefaniak v. HSBC Bank USA, N.A.*,
   No. 05-CV-720(S), 2008 U.S. Dist. LEXIS 53872
   (W.D.N.Y. July 8, 2008)...........................................................................................19

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)......................................................................13

*Swedish Hosp. Corp. v. Shalala*,
   1 F.3d 1261 (D.C. Cir. 1993) .....................................................................................7

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
   No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608
   (S.D.N.Y. May 14, 2004)..........................................................................................10

- vii -

**Page**

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
  396 F.3d 96 (2d Cir. 2005)...................................................................................................6

**STATUTES, RULES AND REGULATIONS**

29 U.S.C.
  §1132(g)(1) ......................................................................................................................4

Federal Rules of Civil Procedure
  Rule 23(h) ...................................................................................................................4, 20

**SECONDARY AUTHORITY**

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
*Federal Practice and Procedure* (3d ed. 2005)
  §1803...............................................................................................................................5

1166521_1

## I.      INTRODUCTION

Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Lead Counsel") negotiated a settlement of this class action (the "Action") with Defendants Meridian Capital Partners, Inc., Meridian Diversified Fund Management, LLC, William H. Lawrence, Donald J. Halldin, John L. Sica, Howard B. Fischer, Laura K. Smith, Robert J. Murphy, Mark A. Hurrell, and Peter M. Brown (collectively, "Defendants") for $6,150,000, to be distributed to the Class following deduction of administration costs, taxes, and attorneys' fees and expenses.[1]  In accordance with the Stipulation, Defendants have paid or caused to be paid $6.15 million into an Escrow Account, which is currently on deposit for the benefit of the Class.  In exchange for this cash payment, and upon final approval of the Settlement by the Court, Plaintiff and the Class will dismiss their complaint and release all related claims in the litigation.

As explained in the contemporaneously filed submissions in support of the Settlement, this Settlement is a fair, reasonable, and adequate result for the Class under the circumstances.  For its efforts in achieving this result, Lead Counsel[2] seeks a percentage fee of 19% of the Settlement Amount, or $1,168,500, plus $146,312.06 in expenses in connection with this Action.  The substantial and certain recovery obtained for the Class — an all cash recovery of $6,150,000 — was achieved through the skill, experience, and effective advocacy of Plaintiff's Counsel.  Plaintiff's Counsel's fee has been wholly contingent upon the result achieved.[3]

---

[1]   All capitalized terms not defined herein have the same meanings set forth in the Settlement Agreement ("Stipulation" or "Settlement"), previously filed with the Court.  Dkt. No. 165.

[2]   This application is also made on behalf of additional counsel for Plaintiff, Slevin & Hart, P.C. (collectively with Lead Counsel, "Plaintiff's Counsel").

[3]   Submitted herewith in support of approval of the proposed Settlement is Plaintiff's Memorandum of Law in Support of Motion for Final Approval of Settlement and Plan of Allocation (the "Settlement Brief") and the Declaration of David A. Rosenfeld in Support of Plaintiff's Motion

- 1 -

The requested fee is consistent with, if not lower than, the fees awarded in similar actions in this Circuit and decisions throughout the country and the percentage method is the appropriate method of compensating counsel for the result obtained.  The amount requested is especially warranted in light of the substantial recovery obtained for the Class and the significant obstacles presented in the prosecution and settlement of this litigation against Defendants.

As set forth below, the relevant factors articulated in the Second Circuit's *Goldberger* decision strongly support the requested award.  *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  The litigation involves complex legal issues.  This Action is not an ordinary securities litigation case; rather, it involves third party investors and requires an understanding of sophisticated financial instruments, non-public markets, and ERISA law.  Moreover, Defendants have and would continue to argue they always acted prudently, denying any wrongdoing.  Among other things, Defendants argued that: (i) Tremont – the entity through which the MDEF invested in Madoff – was both highly credible and highly regulated;  (ii) they conducted adequate due diligence on Tremont and quantitative analysis on the Rye Fund; (iii) their due diligence program was ordinarily highly effective; (iv) they conducted adequate due diligence on Madoff (in which Defendants did not directly invest); (v) Madoff himself was highly credible and BMIS was highly regulated, as they had passed multiple SEC investigations; (vi) manager-level fraud was an inherent risk specifically-disclosed in the offering documents for MDEF; and (vii) they had reviewed investment trade tickets.  *See* Rosenfeld Decl., ¶36.  Even assuming a finding of liability at trial,

---

for Final Approval of Settlement and Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses (the "Rosenfeld Declaration" or "Rosenfeld Decl."), which more fully describes the history of the litigation, the claims asserted, the investigation undertaken, the negotiation and substance of the Settlement, the substantial risks of the litigation, and the reasonableness of the fee request.  Also submitted herewith are the Declarations of Plaintiff's Counsel setting forth the time spent and expenses of each firm in prosecuting the litigation.

Defendants would have strenuously argued that they did not cause any damages to the Class. *Id.*, ¶¶38-41. This Action was a novel and risky case to prosecute; therefore the requested fee is reasonable.

Plaintiff's Counsel undertook the representation of the Class on a contingent fee basis, and firmly believe that the Settlement is the result of their creative and diligent services, as well as their reputations as attorneys who are unwavering in their dedication to the interests of the class and unafraid to zealously prosecute a meritorious case through trial and subsequent appeals. In a case asserting claims based on complex legal and factual issues which were opposed by highly skilled and experienced defense counsel, Plaintiff's Counsel succeeded in securing a fair, reasonable, and adequate result for the Class under difficult and challenging circumstances. As a result, Lead Counsel submits that the requested fee is fair and reasonable and should be awarded by this Court.

Members of the Class appear to agree. In accordance with this Court's Order Preliminarily Approving Settlement and Providing for Notice, notice was provided to Class Members (the "Notice").[4] The Notice informed members of the Class that Lead Counsel would submit an application for 19% of the Settlement Amount plus expenses not to exceed $200,000, plus interest on such amounts. In response to this notice program, no objections to Lead Counsel's fee or expense request have been received to date, and the time for such objections has nearly expired.[5] This fact strongly evidences that the fee and expense request is fair and reasonable.

For the reasons set forth herein and in the Rosenfeld Declaration, Lead Counsel respectfully submits that the attorneys' fees requested are fair and reasonable under the applicable legal standards

---

[4]   *See* paragraphs 4 through 8 of the accompanying Declaration of Maggie McGill, on behalf of Gilardi & Co. LLC, the Claims Administrator.

[5]   The deadline for the filing of objections is August 17, 2016.

and in light of the contingency risk undertaken, and therefore should be awarded by the Court. Moreover, the expenses requested are reasonable in amount and were necessary for the successful prosecution of the litigation.

## II.    FACTUAL AND PROCEDURAL SUMMARY

The Court is respectfully referred to the accompanying Rosenfeld Declaration for a full discussion of, *inter alia*, the factual background and procedural history of the Action, the litigation efforts of Plaintiff's Counsel, the significant risks of continued litigation, and a discussion of the negotiations leading to this Settlement.

## III.    ARGUMENT

### A.    Plaintiff's Counsel Are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The 19% fee request in this Action is fair and reasonable and should be approved.  Under Rule 23(h), "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).[6]  Attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated for their services from that settlement fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 U.S. Dist. LEXIS 64517, at *30 (S.D.N.Y. May 9, 2014); *see also Goldberger*, 209 F.3d at 47; *Savoie v. Merchants Bank*, 166 F.3d 456, 459-60 (2d Cir.

---

[6]    ERISA Section 1132(g)(1) provides that in actions such as this, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. §1132(g)(1). Courts long interpreted this provision to reward only "prevailing parties," but the United States Supreme Court recently lowered the threshold for fee-seeking ERISA litigants.  According to *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010), a claimant need only show "'some degree of success on the merits'" to deserve an award under §1132(g)(1). *Id.* at 254. Citations are omitted throughout, unless otherwise indicated.

- 4 -

1999).  "The court's authority to reimburse the representative parties . . . stems from the fact that the class-action device is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts."  7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1803, at 325 (3d ed. 2005).  The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf.  *See Goldberger*, 209 F.3d at 47; *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *30.

"Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature."  *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *30-*31.  Courts in this Circuit have consistently adhered to these teachings.  *See In re Top Tankers Inc., Sec. Litig.*, No. 06 Civ. 13761 (CM), 2008 U.S. Dist. LEXIS 58106, at *38 (S.D.N.Y. July 31, 2008) ("'It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to "a reasonable fee – set by the court – to be taken from the fund."'").  The "[d]etermination of 'reasonableness' is within the discretion of the district court."  *In re Interpublic Sec. Litig.*, No. Civ. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *31 (S.D.N.Y. Oct. 27, 2004).

**B.    The Court Should Award a Reasonable Percentage of the Common Fund**

Courts routinely find that the percentage-of-the-fund method, under which counsel is awarded a percentage of the fund that they created, is the preferred means to determine a fee because it "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the

- 5 -

efficient prosecution and early resolution of litigation.'" *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 122 (2d Cir. 2005); *see also Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) ("[A]s the district court recognized, the prospect of a percentage fee award from a common settlement fund, as here, aligns the interests of class counsel with those of the class."). The percentage approach also recognizes that the quality of counsel's services is measured best by the results achieved and is most consistent with the system typically used in the marketplace to compensate attorneys in non-class contingency cases. *See Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (the "advantages of the percentage method . . . are that it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made, and that it is consistent with the system typically used by individual clients to compensate their attorneys").

The Supreme Court has also indicated that attorneys' fees in common-fund cases generally should be based on a percentage of the fund. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine' . . . a reasonable fee is based on a percentage of the Fund bestowed on the class"). In expressly approving the percentage method, the Second Circuit recognized that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources."[7]  *Goldberger*, 209 F.3d at 48-49;[8] *Savoie*, 166 F.3d at 460 (stating that

---

[7]   *See, e.g.*, *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1296, 1306 (E.D.N.Y. 1985) (criticizing lodestar approach as one that "tends to encourage excess discovery, delays and late settlements, while it discourages rapid, efficient and cheaper resolution of litigation"), *aff'd in part and rev'd in part on other grounds*, 818 F.2d 226 (2d Cir. 1987); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) (noting that lodestar method has been criticized for giving plaintiffs' counsel "the incentive to delay settlement in order to run up fees"); *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) (lodestar method creates "'a disincentive for the early settlement of cases'") (citation omitted); *Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 942, 964 (E.D. Tex. 2000) ("Again, simply put, the lodestar method rewards plodding mediocrity and penalizes expedient success.").

"percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases").

The trend among district courts in this Circuit, although not uniform, is to award fees using the percentage-of-the-fund method, rather than the lodestar approach. *See, e.g.*, *In re OSG Sec. Litig.*, No. 1:12-cv-07948-SAS, slip op. (S.D.N.Y. Dec. 2, 2015); *In re Austin Capital Mgmt. Ltd., Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 1:09-md-02075-TPG, slip op. (S.D.N.Y. Oct. 2, 2014); *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *35; *Landmen Partners Inc. v. The Blackstone Grp. L.P.*, No. 08-cv-03601-HB-FM, 2013 U.S. Dist. LEXIS 190808, at *9-*10 (S.D.N.Y. Dec. 18, 2013); *Bd. of Trs. of the Operating Eng'rs Pension Trust v. JPMorgan Chase Bank, N.A.*, No. 09-cv-09333-KBF, slip op. (S.D.N.Y. Nov. 20, 2013); *In re Beacon Assocs. Litig.*, No. 09 Civ. 777 (CM), 2013 U.S. Dist. LEXIS 82192, at *44-*45 (S.D.N.Y. May 9, 2013); *Aponte v. Comprehensive Health Mgmt.*, No. 10 Civ. 4825 (JLC), 2013 U.S. Dist. LEXIS 47637, at *16 (S.D.N.Y. Apr. 2, 2013) ("The Court finds that the amount of fees requested is fair and reasonable using the 'percentage-of-recovery' method, which is consistent with the 'trend in this Circuit.'") (citation omitted); *In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2012 U.S. Dist. LEXIS 108516, at *17 (S.D.N.Y. Aug. 1, 2012) ("'the percentage method continues to be the trend of district courts in th[e Second] Circuit'") (citation omitted); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071

---

[8]    The use of the percentage-of-the-fund method in common fund cases has been approved by other Courts of Appeals that have addressed the issue. *See Thirteen Appeals*, 56 F.3d at 305; *GMC Pick-Up Truck*, 55 F.3d at 821-22; *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993). Indeed, the Eleventh and District of Columbia Circuits require the use of the percentage method in common fund cases. *Camden I*, 946 F.2d at 774; *Swedish Hosp.*, 1 F.3d at 1271.

(RJH), 2005 U.S. Dist. LEXIS 24890, at *22 (S.D.N.Y. Oct. 24, 2005) ("The trend in the Second Circuit recently has been to use the percentage method."); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003) (trend in this Circuit is to award attorneys' fees using the percentage method), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005); *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (trend in this Circuit is to use the percentage method); *see also In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) (stating that "[c]ourts increasingly have come to recognize the shortcomings of the lodestar/multiplier method as a universal rule for compensation"); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992) (holding that "the lodestar formula is undesirable if an alternative is available").

On a percentage basis, the 19% award falls within the range of other recent percentage fee awards within the Second Circuit.  *See In re JP Morgan Chase & Co. Sec. Litig.*, No. 1:12-cv-03852-GBD, slip op. (S.D.N.Y. May 10, 2016); *Freedman v. Weatherford Int'l Ltd.*, No. 2121(LAK), 2015 WL 745414, at *2 (S.D.N.Y. Nov. 23, 2015); *Austin Capital*, slip op. at 1; *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *60; *Landmen Partners*, 2013 U.S. Dist. LEXIS 190908, at *9-*10; *Fogarazzo v. Lehman Bros.*, No. 03 Civ. 5194 (SAS), 2011 U.S. Dist. LEXIS 17747, at *4 (S.D.N.Y. Feb. 23, 2011); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-1825, 2010 WL 2653354, at *6 (E.D.N.Y. June 24, 2010).

Given the Supreme Court's indication that the percentage method is proper, the Second Circuit's explicit approval of the percentage method in *Goldberger*, and the trend among the district courts in this Circuit, the Court should award Plaintiff's Counsel's attorneys' fees based on a percentage of the fund.  The percentage approach not only directly aligns the interests of counsel and the class, *Elliot v. Leatherstocking Corp.*, No. 3:10-CV-0934 (MAD/DEP), 2012 U.S. Dist. LEXIS

- 8 -

171443, at *14 (N.D.N.Y. Dec. 4, 2012), it also recognizes that the quality of counsel's services is measured best by the results achieved, and "can serve as a proxy for the market in setting counsel fees." *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001).

### C.    The Relevant Factors Confirm that the Requested Fee Is Reasonable

The Second Circuit in *Goldberger* explained that whether a court uses the percentage-of-the-fund method or the lodestar approach, it should continue to consider the traditional criteria that reflect a reasonable fee in common fund cases, including: (i) the time and labor expended by counsel; (ii) the risks of the litigation; (iii) the magnitude and complexity of the litigation; (iv) the requested fee in relation to the settlement; (v) the quality of representation; and (vi) public policy considerations. *Goldberger*, 209 F.3d at 50.  An analysis of these factors demonstrates that the requested fee is fair and reasonable.

### 1.    The Time and Labor Expended by Counsel

Plaintiff's Counsel have expended substantial time and effort pursuing this Action on behalf of the Class.  Since its inception over six years ago, Plaintiff's Counsel and their paraprofessionals devoted more than 5,860 hours to this Action.  As discussed above and in the Rosenfeld Declaration, Plaintiff's Counsel conducted an extensive investigation of the issues involved in this case, and drafted highly-detailed complaints.  Plaintiff's Counsel opposed Defendants' motion to dismiss, moved for partial reconsideration of the Court's decision on the motion to dismiss, and conducted extensive discovery, including document review and depositions.  Plaintiff's Counsel also moved for class certification, which motion was pending at the time this Settlement was reached.  Plaintiff's Counsel also met with Madoff in prison in connection with their prosecution of Plaintiff's claims. Settlement negotiations were complex and took place over an extended period of time.  In advance of formal mediation, Plaintiff's Counsel prepared a comprehensive mediation brief which was

- 9 -

provided to the mediator and Defendants.  Moreover, Plaintiff's Counsel calculated the estimated damages suffered by the Class and prepared the proposed Plan of Allocation.  The legal work on this Action will not end with the Court's approval of the proposed Settlement.  Additional hours and resources necessarily will be expended assisting members of the Class, shepherding the claims process, and responding to Class Member inquiries.  *See Aponte*, 2013 U.S. Dist. LEXIS 47637, at *18.  The time and effort devoted to this case by Plaintiff's Counsel to obtain this $6.15 million Settlement confirm that the 19% fee request is reasonable.

2.     **The Risks of the Litigation**

a.     **The Contingent Nature of Plaintiff's Counsel's Representation Supports the Requested Fee**

The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).  "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608, at *11 (S.D.N.Y. May 14, 2004); *Am. Bank Note*, 127 F. Supp. 2d at 433 (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Sec. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").  This risk encompasses not just the risk of no payment, but also the risk of underpayment. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court

- 10 -

failed to account for, among other things, risk of underpayment to counsel).  The reasonableness of the requested fee is also supported by an evaluation of the risks undertaken by Plaintiff's Counsel in prosecuting this class action.

> [Plaintiffs'] Counsel undertook this Action on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute the Action without a guarantee of compensation or even the recovery of expenses.  Unlike counsel for Defendants, who is paid substantial hourly rates and reimbursed for their expenses on a regular basis, [Plaintiffs'] Counsel ha[ve] not been compensated for any time or expenses since this case began, and would have received no compensation or expenses had this case not been successful.  From the outset, [Plaintiffs'] Counsel understood that [they were] embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the enormous investment of time and money the case would require.  In undertaking that responsibility, [Plaintiffs'] Counsel [were] obligated to ensure that sufficient attorney and paraprofessional resources were dedicated to the prosecution of the Action and that funds were available to compensate staff and to pay for the considerable costs which a case such as this entails.  Because of the nature of a contingent practice where cases are predominantly complex lasting several years, not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation.  Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

*City of Providence*, 2014 U.S. Dist. LEXIS 64517, at \*40-\*41.

In addition to advancing litigation and overhead expenses for over six years, Plaintiff's Counsel faced the possibility that they would receive no attorneys' fees.  It is wrong to presume that a law firm handling complex contingent litigation always wins.  Tens of thousands of hours have been expended in losing efforts.  The factor labeled by the courts as "the risks of litigation" is not an empty phrase.  There are numerous cases where plaintiffs' counsel in contingent cases such as this, after the expenditure of thousands of hours, has received no compensation.  *See In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."); *see also In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16, 2009) (court granted summary

- 11 -

judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $48 million), *aff'd*, 627 F.3d 376 (9th Cir. 2010). Lead Counsel is aware of many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by members of the plaintiff's bar produced no fee for counsel. *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 473 (S.D.N.Y. 2010) (after completion of extensive foreign discovery, 95% of plaintiffs' damages were eliminated by the Supreme Court's reversal of 40 years of unbroken circuit court precedents in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)).

**b.      Litigation Risks**

While Plaintiff remains confident in its ability to prove its claims and to effectively rebut Defendants' defenses, it recognizes that proving liability was far from certain. Plaintiff faced substantial risks if the Action continued.

Defendants articulated defenses to the allegations that may have been accepted by the Court at the summary judgment stage or by the jury at trial. Among other things, Defendants would continue to argue that: (i)Tremont was both highly credible and highly regulated; (ii) they conducted adequate due diligence on Tremont and quantitative analysis on the Rye Fund; (iii) their due diligence program was ordinarily highly effective; (iv) they conducted adequate due diligence on Madoff (in which Defendants did not directly invest); (v) Madoff himself was highly credible and BMIS was highly regulated, as they had passed multiple SEC investigations; (vi) manager-level

- 12 -

fraud was an inherent risk specifically-disclosed in the offering documents for MDEF; and (vii) they

had reviewed investment trade tickets.[9]  Rosenfeld Decl., ¶36.

### c.    Risk as to Damages

Whether Plaintiff could prove the estimate of damages was also unsettled.  Defendants

strenuously disagreed with Plaintiff's damage estimates and maintained the Class suffered no

damages as a result of their action or inaction.  Defendants maintained that Plaintiff did not make its

investments with Madoff, but rather in an ERISA fund that outperformed all relevant benchmarks.

*Id.*, ¶39.  Defendants would further argue that prior to the revelation of the Madoff fraud,

Defendants' fund was already valued at $13 million less than it was when Plaintiff redeemed

portions of the fund at other points in time.  *Id.*  In order for the Class to recover damages at the level

estimated by Plaintiff, it would have to prevail on each and every one of the claims alleged.  The

damage assessments of the parties' trial experts would be sure to vary substantially, and trial would

become a "battle of experts."  The outcome of such battles is never predictable, and there existed the

very real possibility that the Court could be swayed by experts for the Defendants to minimize the

Class' losses.  *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009

U.S. Dist. LEXIS 120953, at *20-*21 (S.D.N.Y. Dec. 23, 2009); *Maley*, 186 F. Supp. 2d at 365;

*Strougo v. Bassini*, 258 F. Supp. 2d 254, 259 (S.D.N.Y. 2003).  Thus, even if Plaintiff prevailed as to

liability at trial, the judgment obtained could well have been only a fraction of the damages claimed.

### 3.    The Magnitude and Complexity of the Litigation

The complexity of the litigation is another factor examined by courts evaluating the

reasonableness of attorneys' fees requested by class counsel.  *See Chatelain v. Prudential-Bache*

---

[9]    This Court previously found this fact interesting, noting at a conference that "it would strike me
as very strange . . . to say that I have to go behind those confirmation slips.").  *See* Rosenfeld Decl.,
¶36.

*Sec.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992).   The fee request is strongly supported by the complexity of ERISA breach of fiduciary duty claims such as those asserted here.   *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).   ERISA claims have been described as implicating "'a rapidly developing, and somewhat esoteric, area of the law.'"  *Id.* at 459 n.13 (citation omitted).   Clearly, the complex and multifaceted subject matter involved in this Action supports the fee request.

As described in greater detail in the accompanying Settlement Brief and Rosenfeld Declaration, this Action involved difficult, complex, hotly disputed, and expert-intensive issues, such as fiduciary duties, damages and causation.   Lead Counsel undertook its investigation and litigation efforts on a contingent basis.

As detailed in the Rosenfeld Declaration, Defendants have vigorously opposed Plaintiff's claims.   Assuming Plaintiff succeeded in certifying the Class and survived a summary judgment motion, trial preparation would have required many additional hours of work, at great expense.   The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the considerable expenditure of judicial resources.   Moreover, the Settlement obtained by Lead Counsel avoids the difficulties and uncertainties of presenting the Class' damages model to the Court in hopes of proving the full amount of damages.   As with any litigated case, Plaintiff would face an uncertain outcome as to liability and damages if this Action were to continue to trial.   In addition, this Action was vigorously contested, and Defendants were represented by very experienced and qualified attorneys.  *See In re Brown Co. Sec. Litig.*, 355 F. Supp. 574, 592-93 (S.D.N.Y. 1973) (standing of opposing counsel underscores complexity of litigation and challenges faced by class counsel).   As such, the immediacy and certainty of the substantial recovery that the Settlement

- 14 -

provides the Class, when considered against the very real risks of continuing to a difficult trial, clearly weigh in favor of the Settlement and, consequently, in favor of the fee request. Accordingly, these factors support the conclusion that the requested fee is reasonable and fair.

### 4.      The Quality of Representation

The quality of the representation by Plaintiff's Counsel and the standing of that counsel in the bar are important factors that support the reasonableness of the requested fee. *See City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *47; *In re Flag Telecom Holdings*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *82 (S.D.N.Y. Nov. 8, 2010). It took a great deal of skill to achieve a settlement at this level in this particular case. Specifically, this Action required investigation and mastery of complex factual circumstances, the ability to develop creative legal theories, and the skill to respond to a host of legal defenses. To properly perform the legal services this Action called for, Plaintiff's Counsel were required to have a robust understanding of complex ERISA laws and a familiarity with complex litigation procedures.

The quality of representation by counsel of both sides of this Action was high. Indeed, Defendants' counsel, Freshfields Bruckhaus Deringer US LLP, a leader among international litigation firms, has well-noted expertise in corporate litigation practices. *See City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *48 ("The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work."). Likewise, Defendants had an extensive litigation budget and would (and did) spare no expense to resolve the case in its favor.

Plaintiff's Counsel are nationally known leaders in the fields of class actions and complex litigation, including securities and ERISA litigation, and have substantial experience litigating class actions in courts throughout the country with success. As experienced class action, securities and ERISA litigators, Plaintiff's Counsel not only had to use their knowledge, skill and efficiency from

past experiences, but have also developed expertise in the unique issues presented here to overcome significant obstacles during this litigation.  This favorable Settlement is attributable to the diligence, determination, hard work, and reputation of Plaintiff's Counsel, who developed, litigated, and successfully negotiated the settlement of this Action, an immediate cash recovery in a very difficult case, without the risk of further litigation.

### 5.  Public Policy Considerations

As this District has well recognized, ERISA has an "'"essential remedial purpose of protecting beneficiaries of pension plans."'"  *Coram Healthcare Corp. v. CIGNA*, 236 F. Supp. 2d 312, 313 (S.D.N.Y. 2002) (Berman, J.) (citation omitted).  Indeed, "'the purpose of ERISA [is] to promote the interests of plan beneficiaries and allow them to enforce their statutory rights.'"  *Id*. at 314 (citation omitted).

Recoveries like the one secured here are precisely why ERISA was enacted.  *Greenblatt v. Prescription Plan Servs. Corp.*, 783 F. Supp. 814, 828 (S.D.N.Y. 1992) ("[A]s this action was brought to benefit Fund beneficiaries as a group, the strong policy consideration of ensuring the ability of the Fund to properly manage its resources so as to benefit all plan participants further supports an award of attorneys' fees under the circumstances."); *see also Benesowitz v. Metro. Life Ins. Co.*, No. 04-CV-805 (TCP), 2009 U.S. Dist. LEXIS 64269, at *30 (E.D.N.Y. July 9, 2009) ("Accordingly, plaintiff's case conferred benefits not only on behalf of individuals in the Honeywell Plan, but also conferred benefits on any individual whose disability claim was wrongly denied by any insurer in New York based on a pre-existing condition.").  Thus, as this Action encourages private lawsuits to protect investors, important public policy consideration will be promoted by the award of the fees requested herein.  *See Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank,*

*N.A.*, No. 09 Civ. 686 (SAS), 2012 U.S. Dist. LEXIS 79418, at *7 (S.D.N.Y. June 7, 2012) ("*AFTRA*").

6. **The Requested Attorneys' Fees Are Also Reasonable Under the Lodestar Cross-Check**

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, a district court may cross check the proposed award against counsel's lodestar. *Goldberger*, 209 F.3d at 50. Under the lodestar method, the court must engage in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work. *See, e.g.*, *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *37. "Calculation of the lodestar, however, is simply the beginning of the analysis." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *In re Ivan F. Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995). Performing the lodestar cross-check here confirms that the fee requested by Lead Counsel is reasonable and should be approved.

Plaintiff's Counsel and their paraprofessionals have spent, in the aggregate, 5,869.80 hours in the prosecution of this case. *See* Plaintiff's Counsel's Declarations, submitted herewith. The resulting lodestar is $2,902,312.50. The amount of attorneys' fees requested by Lead Counsel herein, 19% of the Settlement Amount, or $1,168,500, plus interest, represents approximately 40% of Plaintiffs' Counsel's lodestar, resulting in a negative multiplier.[10] *See In re Veeco Instruments*

---

[10] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1153 (2d Cir.

*Sec. Litig.*, No. 05-MD-01695 (CM), 2007 U.S. Dist. LEXIS 85554, at \*31-\*32 (S.D.N.Y. Nov. 7, 2007) ("Not only is Plaintiffs' Counsel not receiving a premium on their lodestar to compensate them for the contingent risk factor, their fee request amounts to a deep discount from their lodestar.").

In determining whether the rates are reasonable, the Court should take into account the attorneys' professional reputation, experience, and status. As the declarations of counsel demonstrate, Plaintiff's Counsel are among the most prominent, experienced, and well-regarded securities and ERISA practitioners in the nation. Therefore, their hourly rates are reasonable here. *See City of Providence*, 2014 U.S. Dist. LEXIS 64517, at \*38 ("'In determining the propriety of the hourly rates charged by plaintiffs' counsel in class actions, courts have continually held that the standard is the rate charged in the community where the services were performed for the type of services performed by counsel . . . and the rates charge[d] by Lead Counsel are in line with rates charged by New York firms that ***defend*** class actions on a regular basis.'") (emphasis in original).

The lodestar/multiplier is to be used merely as a cross-check on reasonableness. To find otherwise undermines the principles supporting the percentage approach and encourages needless lodestar building litigation. *See also In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 196 (E.D. Pa. 2000) ("The court will not reduce the requested award simply for the sake of doing so when every other factor ordinarily considered weighs in favor of approving class counsel's request of thirty percent."). Plaintiff's Counsel invested substantial time and effort prosecuting this Action to a successful completion. The requested fee, therefore, is manifestly reasonable, whether calculated as a percentage of the fund or in relation to Plaintiff's Counsel's lodestar.

---

1983) (use of current rates appropriate where services were provided within two or three years of application); *see also City of Providence*, 2014 U.S. Dist. LEXIS 64517, at \*38.

### 7.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

Regardless of which method a court uses to award attorneys' fees, the award must be reasonable under the circumstances of the particular case. *Goldberger*, 209 F.3d at 47.  In selecting an appropriate fee award, the Supreme Court recognizes that a fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace.  *Missouri*, 491 U.S. at 285 (1989).  If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery.  *Blum*, 465 U.S. at 903* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring).

On a percentage basis, the compensation requested here is well within the range of percentage fee awards within the Second Circuit.  *See* page 8 herein.  *See also Menkes v. Stolt-Nielsen SA.*, No. 3:03CV00409(DJS), 2011 U.S. Dist. LEXIS 7066, at *18-*19 (D. Conn. Jan. 25, 2011) (awarding 33-1/3%); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 U.S. Dist. LEXIS 47036, at *27 (S.D.N.Y. May 11, 2010) (awarding fees of one-third of settlement); *Collins v. Olin Corp.*, No. 3:03-cv-945 (CFD), 2010 U.S. Dist. LEXIS 39862, at *22-*26 (D. Conn. Apr. 21, 2010) (same); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713 (PGG), 2010 U.S. Dist. LEXIS 18913, at *18 (S.D.N.Y. Mar. 3, 2010) (same); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 U.S. Dist. LEXIS 4067, at *22 (E.D.N.Y. Jan. 20, 2010) (same); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 02494 (DF), 2009 U.S. Dist. LEXIS 45277, at *11 (S.D.N.Y. May 28, 2009) (same); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05-CV-720(S), 2008 U.S. Dist. LEXIS 53872, at *10 (W.D.N.Y. July 8, 2008) (awarding 33% of the fund, finding it "typical in class action settlements in the Second Circuit"); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 (DLC),

2005 U.S. Dist. LEXIS 10848, at *23-*24 (S.D.N.Y. June 7, 2005) (same); *Maley*, 186 F. Supp. 2d at 374 (same).

**8.     The Class' Reaction to the Fee Request**

To date, the Claims Administrator has mailed copies of the Notice to all members of the Class, informing them, *inter alia*, that Lead Counsel intended to apply to the Court for an award of attorneys' fees of 19% of the Settlement Amount, plus expenses not to exceed $200,000, plus interest on both amounts.  The time to object to the fee request expires on August 17, 2016.  To date, not a single objection to the fee and expense request has been received.  Such a "'low level of objections is a rare phenomenon.'"  *Top Tankers*, 2008 U.S. Dist. LEXIS 58106, at *54 (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005)).  Moreover, "a significant number of investors in the class were 'sophisticated' institutional investors that had considerable financial incentive to object [to the settlement] had they believed [the settlement was unfair or] the requested fees were excessive."  *Rite Aid*, 396 F.3d at 305.  The fact that no objections were received is compelling evidence of the fairness of the fee request.

**IV.   PLAINTIFF'S COUNSEL'S EXPENSES WERE REASONABLY
        INCURRED AND NECESSARY TO THE PROSECUTION OF THIS
        ACTION**

Rule 23(h) also allows courts to award class counsel for "nontaxable costs that are authorized by law."  Fed. R. Civ. P. 23(h); *see also City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *55; *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable expenses necessary to the representation of the class).

Lead Counsel respectfully requests payment of $146,312.06 in litigation expenses ("Expense Request").  Lead Counsel set forth in the Notice that it would seek up to $200,000 in expenses.  Each of the declarations of counsel sets forth in detail each of the expenses for which payment is sought.

- 20 -

All of the requested expenses were reasonable, necessary, and directly related to the prosecution of this Action.  The costs include routine expenses related to copying, court fees, postage and shipping, phone charges, legal research, and travel and transportation, as well as expenses for an expert and an investigator, database management charges for the documents produced in the litigation, and mediation fees.  All of these expenses were critical to Plaintiff's Counsel's success in achieving the Settlement.  *See Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys . . . [and] [f]or this reason, they are properly chargeable to the Settlement fund.") (citation omitted); *see also AFTRA*, 2012 U.S. Dist. LEXIS 79418, at *4 (finding plaintiffs' counsel's request of $1.79 million in expenses reasonable).  Not a single objection to the expense request has been received.  Accordingly, Lead Counsel respectfully requests payment for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

## V.   CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully requests the Court enter an order granting an award of attorneys' fees and litigation expenses in the amounts requested.

DATED:  August 3, 2016                          Respectfully submitted,

                                                ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
                                                ELLEN GUSIKOFF STEWART


                                                     s/ Ellen Gusikoff Stewart
                                                ───────────────────────────────
                                                   ELLEN GUSIKOFF STEWART

1166521_1

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
JOHN K. GRANT
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
johnkg@rgrdlaw.com

Lead Counsel for Plaintiff

SLEVIN & HART, P.C.
BARRY S. SLEVIN
SHARON GOODMAN
1625 Massachusetts Avenue, NW, Suite 450
Washington, DC  20036
Telephone:  202/797-8700
202/234-8231 (fax)
bslevin@slevinhart.com
sgoodman@slevinhart.com

Additional Counsel for Plaintiff

1166521_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 3, 2016, I caused the foregoing Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses to be served electronically on all ECF participants.

s/ Ellen Gusikoff Stewart
_____
ELLEN GUSIKOFF STEWART

1166521_1